821 So.2d 530 (2002)
STATE of Louisiana, Appellee
v.
Christopher HILBUN, Appellant.
No. 36,048-KA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*531 Stephen A. Glassell, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Michael A. Pitman, Assistant District Attorney, for Appellee.
Before GASKINS, PEATROSS and DREW, JJ.
DREW, J.
Christopher Hilbun pleaded guilty to vehicular homicide and first degree vehicular negligent injuring (R.S. 14:32.1; R.S. 14:39.2). He was sentenced to serve 15 years at hard labor with 9 years suspended and 2 years without benefit of parole, probation, or suspension of sentence on the vehicular homicide charge, and 5 years at hard labor with 4 years suspended on the *532 first degree vehicular negligent injuring charge. In addition, the defendant was fined $2,000 on each count. Further, the court placed the defendant on supervised probation for 3 years on each charge, imposing special conditions. The sentences and fines were ordered served and executed consecutively, while the probation terms were ordered served concurrently. The defendant now appeals his sentences. We amend the sentences to conform with the trial court's intent that the probationary period commence immediately upon defendant's release from the physical custody of the Louisiana Department of Corrections. We affirm the conviction. As amended, we affirm the sentences.

FACTS
On December 4, 1999, at approximately 5:00 a.m., the defendant was operating his vehicle under the influence of alcohol. The defendant's vehicle crossed the center line on Linton Road in Bossier Parish and collided head-on with a vehicle driven by 17-year-old J.B., who sustained serious injuries, including two broken legs. J.B.'s passenger, 14-year-old M.C., died as a result of the collision. The defendant pleaded guilty to one count of vehicular homicide and one count of first degree vehicular negligent injuring.

DISCUSSION
In his first assignment of error, defendant argues that the trial court imposed excessive sentences. He contends that:
(i) The mandatory jail time should be reduced to a total of two years;
(ii) He should be allowed to complete the halfway house requirement while incarcerated in the custody of the Department of Corrections; and
(iii) The requirement of weekly group presentations should be reduced to a total of thirty six presentations, one per month, during the period of probation.
At the outset, the defendant notes that he is eligible for parole and could earn good-time credits resulting in his release from prison before he completes his seven-year prison term. Under this scenario, the defendant notes that he may be released from prison three and one half years before his probation begins. As such, the defendant argues that the trial court should have instead imposed only a two-year term in parish jail, pursuant to La.C.Cr.P. art. 895. The defendant further argues that the probationary condition that he complete an inpatient substance abuse program would be of little benefit if the defendant were released from prison for a significant period of time before he would be required to complete it.
In addition, the defendant argues that the probation condition ordering him to stay in a halfway house for nine months is not authorized by law or reasonably related to rehabilitation because he has a strong family support system. In the alternative, the defendant argues that his incarceration should satisfy the halfway house condition and he should not be required to stay in a halfway house after his release.
Lastly, the defendant argues that the probationary condition that he make two one-hour presentations per week on the dangers of drinking and driving are not authorized by law or reasonably related to rehabilitation because it would be of little benefit if he was released from prison for a significant period of time before he would be required to complete it and the number of presentations required is excessive given his introverted personality.
The law on excessive sentence *533 claims is well settled.[1] R.S. 14:32.1 provides, in pertinent part, that:
Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than two years nor more than twenty years. At least one year of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court-approved substance abuse program or a court-approved driver improvement program, or both. All driver improvement courses required under this Section shall include instruction on railroad grade crossing safety.
Further, La. R.S. 14:39.2, provides, in pertinent part, that:
Whoever commits the crime of first degree vehicular negligent injuring shall be fined not more than two thousand dollars or imprisoned with or without hard labor for not more than five years, or both.
Although the defendant relies on La. C.Cr.P. art. 895 to argue that his hard labor sentences are illegal or excessive, La.C.Cr.P. art. 895 is limited to imprisonment as a condition of probation. Therefore, the defendant's reliance on La. C.Cr.P. art. 895 is misplaced. Moreover, the record indicates that the trial court took cognizance of all the relevant aggravating and mitigating factors after a lengthy sentencing hearing lasting two days, and thereafter sentenced the defendant appropriately and without constitutional excessiveness.
The sentencing hearing included testimony from J.B. and his father, as well as M.C.'s pastor, M.C.'s father, and M.C.'s barber. Moreover, the defendant testified and presented the testimony of his counselor, mother and father, supervisor, and a *534 family friend. In addition, the court had the assistance of a pre-sentencing investigation report. The trial judge was quite meticulous in his sentencing in this tragic and difficult case.
Before imposing sentence, the trial court noted that the defendant was a first felony offender; summarized the hearing testimony; and noted that he had read all the letters submitted by the state and the defense. The trial court found that during a period of a suspended sentence or probation, there was an undue risk that the defendant would commit another crime due to the defendant's unresolved problem with alcohol; although, when listing mitigating factors, the judge felt that these particular circumstances were unlikely to reoccur, particularly after the defendant completed the terms of this probation. The trial court also found that the defendant was in need of a custodial environment. Further, the trial court found that any lesser sentence would deprecate the seriousness of the defendant's crime and its impact on the victims' families.
The trial court noted several aggravating factors in the case, such as the offense resulted in significant permanent injury and economic loss; it involved multiple victims; and, disturbingly, the defendant was previously involved in misdemeanor offenses involving alcohol. The trial court found as a mitigating factor that the defendant did not intend to inflict harm; however, the trial court noted that his actions were reckless. The trial court further found that the defendant was willing to compensate the victims or their families for damages sustained and he had no prior felony convictions.
The trial court sentenced the defendant to serve 15 years at hard labor with 9 years suspended and 2 years without benefit of parole, probation, or suspension of sentence for his vehicular homicide conviction. The defendant was also sentenced to 5 years at hard labor with 4 years suspended for his first degree vehicular negligent injuring conviction. In addition, the defendant was fined $2,000 on each count. Further, the court placed the defendant on supervised probation for 3 years with special conditions. Given the circumstances of this case and after reviewing the record, it does not appear that the trial court abused its discretion by imposing excessive sentences.
The defendant further challenges the severity of the special probationary conditions imposed by the court.
The purpose of probation is the promotion of a defendant's rehabilitation by allowing him to reintegrate into society without confinement. State v. Clark, 391 So.2d 1174 (La.1980). "It holds no promise and serves no purpose if the conditions are so harsh that the probationer is destined for failure at the outset." State v. Carey, 392 So.2d 443, 444 (La.1981). Special probation conditions must be reasonably related to rehabilitation. La.C.Cr.P. art. 895.
The trial court did not specify when the defendant's probation term would commence. The probationary term could begin at the time of his release from the Department of Correction's ("D.O.C.") physical custody (his discharge from prison) or at the time of the termination of his legal custody (end of parole). However, filed into the record at oral argument without objection from the state is a March 12, 2002 letter from the trial court to defense counsel to the effect that his intention was that the defendant's probation would begin immediately upon his release from physical incarceration. Accordingly, we supplement the record with this per curiam epistle, amend both sentences to provide that the concurrent probationary periods commence *535 immediately upon the defendant's release from the physical custody of the D.O.C., which will result in his parole time and probation time running concurrently.
The special conditions of probation in this matter are all reasonably related to the defendant's rehabilitation. They have obviously been well thought-out by the trial court. Participation in a substance abuse or driving improvement program is required upon a conviction for vehicular homicide La. R.S. 14:32.1(B). Further, despite the defendant's strong family support system, the trial court reasonably found that the defendant's rehabilitation would best be accomplished if he resided in a halfway house. The court considered defendant's long-standing pattern of criminal conduct, all admittedly involving alcohol, including this vehicular homicide and previous misdemeanor crimes. Perhaps most stunning is defendant's admitted use of alcohol after the death of M.C. This sadly confounds the imagination.
Lastly, it was the defendant's suggestion that he give presentations on the dangers of drinking and driving. The defendant has not asserted that giving two one-hour presentations per week would result in financial hardship. Even given the defendant's introverted personality, it does not appear that this probation condition is "so harsh that the probationer is destined for failure at the outset." Therefore, the trial court did not abuse its discretion in fashioning these special probation conditions for the defendant. If he does all humanly possible to accomplish this condition of probation, yet fails, any revocation would be subject to review. This assignment of error is therefore without merit.
Defendant argues in his second assignment of error that the trial court erred in imposing consecutive instead of concurrent jail sentences and fines. He contends that the failure of the trial court to articulate specific reasons for imposing consecutive sentences requires a finding that the consecutive sentences were imposed in error.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La.C.Cr.P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868.
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2d Cir.1992).
Although the trial court did not specifically address his remarks to this issue, it was not essential for him to do so. See also State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). It is sufficient for the trial court to enunciate the appropriate factors in conjunction with the general sentencing guidelines of La.C.Cr.P. art. 894.1. State v. Lewis, 30,536 (La.App.2d Cir.4/8/98), 711 So.2d 383.
Here, there were two physically injured victims, one killed, and the other gravely injured. As illustrated earlier, the trial court thoroughly and diligently discussed its reasons for sentencing the defendant in this manner. This assignment of error is therefore without merit.

ERROR PATENT
Error patent review disclosed that the trial court failed to inform the defendant, *536 who is now advised by this court's opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922. The Louisiana Supreme Court has held that La.C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189.

DECREE
The defendant's conviction is AFFIRMED. The defendant's sentences are amended to require that defendant's probationary period commence immediately upon his physical release from prison. As amended, the sentences are AFFIRMED.
NOTES
[1] The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).

Secondly, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has wide discretion to sentence within the statutory limits. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.