868 So.2d 886 (2004)
STATE of Louisiana
v.
Michael L. HARRIS.
No. 03-KA-710.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
*888 Holli-Herrle Castillo, Louisiana Appellate Project, Marrero, LA, for Appellant, Michael L. Harris.
Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet ClarkAppellate Counsel, Nancy Miller, Donald RowanTrial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On January 6, 2000, the Jefferson Parish District Attorney's Office filed a bill of *889 information charging defendant, Michael L. Harris, with five counts of distribution of cocaine, in violation of La. R.S. 40:967(A). On January 10, 2000, defendant was arraigned and entered a plea of not guilty to all five counts.
On October 18, 2001, defendant filed a motion to sever the counts against him. On October 31, 2001, defendant's motion was heard and denied. Immediately thereafter, trial commenced. After the one-day trial, the twelve-member jury found defendant guilty as charged on all counts.
On November 13, 2001, the trial judge sentence defendant to thirty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each count to run concurrently. That same day, the State filed a multiple offender bill of information alleging that defendant was a third felony offender. Defendant denied the allegations of the multiple offender bill of information. On November 14, 2001, defendant filed a motion to reconsider his sentences on the five distribution counts, which was denied by the trial court.
On December 13, 2002, the trial court held a hearing on the multiple offender bill of information and found that the State had presented sufficient evidence to prove that defendant was a second felony offender. On December 18, 2002, the trial court vacated defendant's underlying sentence on count one of the distribution of cocaine charges and imposed an enhanced sentence of forty years imprisonment at hard labor to run concurrently with the thirty-year sentences imposed on counts two through five of the underlying bill of information. Defendant immediately filed a motion to reconsider sentence, which was denied. Thereafter, defendant filed a timely motion for appeal challenging his convictions and sentences.

FACTS
Deputy David Randall of the Jefferson Parish Sheriff's Office testified that, between June 28, 1999 and August 6, 1999, he was working as an undercover detective with the Narcotics Bureau. On June 28, 1999, Deputy Randall was instructed by his supervising officer to attempt an undercover narcotics purchase at or near 541 Wilson Street in Marrero because there had been complaints of illegal narcotics sales in that area. At approximately 2:00 p.m. that day, Deputy Randall proceeded to the area in an unmarked police van that was specially equipped with hidden video and audio recording capabilities.
Still in his van, Deputy Randall approached a black man that he observed walking down the street and asked the man for "two twenties."[1] The black man placed two rocks in Deputy Randall's hand and Deputy Randall gave the man, later identified as defendant, $40.00 in cash. Deputy Randall then proceeded to a prearranged location and gave the backup agents working with him the narcotics and the videotape of the drug transaction.
On July 8, 1999 and July 12, 1999, Deputy Randall returned to the 400 and 500 blocks of Wilson Street in another attempt to perform an undercover narcotics purchase. Deputy Randall drove the same unmarked van equipped with video and audio recording capabilities to the area and again purchased crack cocaine from defendant. On both occasions, the narcotics transactions were videotaped.
*890 During the July 12, 1999 transaction, defendant told Deputy Randall that, if Deputy Randall did not see him outside, Deputy Randall should sound his horn and defendant would come outside. Deputy Randall informed defendant that his vehicle's horn did not work so Deputy Randall would "holler" for him.
The next day, which was July 13, 1999, Deputy Randall again drove to defendant's home at 541 Wilson Street. Deputy Randall did not see defendant outside but observed the door of the house ajar and yelled to get defendant's attention. When defendant did not respond, Deputy Randall exited his vehicle and knocked on the door of the residence. After defendant invited Deputy Randall inside of his home, Deputy Randall informed defendant that he wanted to purchase two pieces of crack cocaine. Defendant responded that he did not have any but that he could bring Deputy Randall to a location where he could get some.
Deputy Randall returned to his van and followed defendant as he walked down Wilson Street. Defendant then entered the residence at 470 Wilson Street and returned with crack cocaine, which he sold to Deputy Randall.
Deputy Kim Blanche of the Jefferson Parish Sheriff's Office testified that she was working as an undercover narcotics agent on August 6, 1999. On that date, Deputy Blanche was instructed to go into the Wilson Street and Magnolia Drive area of Marrero to attempt an undercover narcotics purchase. Deputy Blanche, driving a van owned by the Jefferson Parish Sheriff's Office and equipped with audio and video transmitters, purchased two twentydollar rocks, which tested positive for crack cocaine, from an individual, who was later identified as defendant. The transaction was videotaped.
During Deputy Randall's testimony, videotaped recordings of the June 28, 1999, July 8, 1999, and July 12, 1999 narcotics transactions were shown to the jury. During Deputy Blanche's testimony, the videotaped recording of the August 6, 1999 narcotics transaction was shown to the jury.
Sergeant Joe Williams of the Jefferson Parish Sheriff's Office Narcotics Division, testified that from June 28, 1999 through August 6, 1999, he was supervisor of the undercover narcotics group, which was investigating complaints of distribution of crack cocaine from 541 Wilson Street and in the 500 block of Magnolia Drive. Sergeant Williams viewed the video recordings of the undercover narcotics transactions at the Detective Bureau and, as a result of previous encounters with the defendant, was able to identify the individual who sold narcotics to Deputy Randall and Deputy Blanche as defendant, Michael Harris. At his instruction, another officer compiled a photographic lineup, which contained defendant's photograph, and showed the lineup separately to Deputy Randall and Deputy Blanche. Both deputies positively identified defendant as the person that had sold them crack cocaine.
After hearing testimony and reviewing the evidence, the twelve-member jury voted unanimously that defendant was guilty of counts one, two, three, and five of distribution of cocaine. The jury found by a vote of eleven to one that defendant was guilty of the fourth count of distribution of cocaine.
In his first assignment of error, defendant argues that the trial court erred in failing to grant the defense's challenges for cause during voir dire of prospective jurors, Ms. Freese and Ms. Guthrie. Defendant specifically argues that the trial judge erred in denying his challenge for Ms. Freese because she indicated that she *891 should not sit on the case due to her former friend's problem with drugs. Defendant specifically argues that the trial judge erred in denying his challenge for Ms. Guthrie because her voir dire responses indicated that she had been the victim of a purse snatching and defense counsel, Mr. Nolting, defended the alleged perpetrator of the purse snatching. The State responds that the trial court did not abuse its discretion in denying either challenge for cause.
Prejudice is presumed when a trial court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1280. An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, 686. To prove error warranting reversal of both the conviction and sentence, a defendant need only show that he exhausted all of his peremptory challenges and that the trial judge erroneously denied a challenge for cause. State v. Connolly, 96-1680 (La.7/1/97), 700 So.2d 810; State v. Richthofen, 01-500 (La.App. 5 Cir. 11/27/01), 803 So.2d 171, 190, writ denied, 02-0206 (La.1/31/03), 836 So.2d 57.
In the instant case, the record reflects defendant exhausted all twelve of his peremptory challenges. Therefore, the issue is whether the trial judge erroneously denied defendant's challenge for cause of Ms. Freese and Ms. Guthrie. La.C.Cr.P. art. 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]
Defendant argues that prospective juror Freese should have been excused for cause based upon her responses during voir dire that she would be upset by sitting on a drug case because she had a former friend who had a drug problem. While Ms. Freese stated during voir dire that she had an "ex-friend" that was "into crack cocaine," she told the prosecutor that she thought she could be fair and impartial. She also stated that she would "try ... my best" to put the past experiences behind her. When questioned further by the prosecutor, Ms. Freese indicated that, if the State failed to prove that defendant distributed cocaine, she would be able to find him not guilty. She also stated that she would be able to follow the law as instructed by the trial judge.
Upon questioning by defense counsel, Ms. Freese stated that she had not seen her former friend in approximately six years because of her former friend's drug problem. Ms. Freese additionally stated that she did not like people that did drugs and that the situation with her friend upset her. When defense counsel asked, "So you really don't think you should sit in this *892 case ...," Ms. Freese responded, "No, sir."
Our examination of the record reveals that Ms. Freese indicated she could follow the law as instructed by the trial judge and that she could find defendant not guilty if the State failed to prove its case. Although Ms. Freese indicated she did not like individuals who used drugs and didn't think she should sit as a juror in the case, none of her responses indicated that she could not be an impartial juror. Accordingly, it does not appear the trial court abused its discretion in denying defendant's challenge for cause of Ms. Freese.
Defendant also contends that the trial court erred in denying his challenge for cause of prospective juror Guthrie. During voir dire, Ms. Guthrie indicated that she had been the victim of two previous crimes: armed robbery and purse snatching. While questioning Ms. Guthrie, defense counsel informed her that he had represented the individual who was accused of snatching her purse. When defense counsel asked if Ms. Guthrie remembered him, she responded that she did not. Ms. Guthrie later stated, "If I would have known it was you I would have stood up if I knew anybody."
Defense counsel subsequently challenged Ms. Guthrie for cause, stating the following:
I remembered her and I'm surprised that she didn't remember me because we had a discussion together at that time, and I do remember her extreme concern over the situation and how unhappy she was about the sentence that my client had. And I think in this particular case, the fact that she knows me and the fact that she didn't say that she knew me, II can't help but ask that she be challenged for cause because I think she was being evasive in things and she obviously has a problem with handling these types of cases.
In denying defendant's challenge for cause, the trial judge noted that Ms. Guthrie appeared to have no recollection that defense counsel had represented the alleged perpetrator of the purse snatching in which she was a victim. The trial judge further added that he found Ms. Guthrie to be unbiased.
On appeal, defendant argues that the trial court erred in denying his challenge for cause of Ms. Guthrie because of the nature of her relationship with defense counsel. La.C.Cr.P. art. 797(3) provides that the State or defendant may challenge a juror for cause based on a relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defense counsel if it is reasonable to conclude that the relationship would influence the juror in arriving at a verdict. In the instant case, the record reflects that Ms. Guthrie did not remember defense counsel until defense counsel informed her of his involvement in the prior case. Furthermore, even if such a relationship existed, the record does not reflect that the relationship would have influenced Ms. Guthrie in arriving at a verdict. Therefore, we do not find that the trial court abused its discretion in denying defendant's challenge for cause of Ms. Guthrie. Based on the foregoing, we conclude that defendant's first assignment of error lacks merit.
In assignment of error number two, defendant argues that the trial court erred in denying the defense's motion to sever. Specifically, defendant contends that the trial court erred in denying his motion to sever because the jury could not segregate the various counts and evidence. Defendant also argues that trying the various counts together caused the jury to infer his bad character, which ultimately *893 led to his conviction. The State responds that the joinder was not prejudicial because the evidence was presented in a logical, compartmentalized manner without confusion of the incidents.
La.C.Cr.P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the instant case, defendant was charged with five counts of distribution of cocaine, in violation of La. R.S. 40:967(A). Although the five offenses occurred on different dates within a six-week period, they involved defendant selling crack cocaine to undercover officers, they occurred in the same general area, four of the five counts involved the sale of narcotics to the same undercover officer, and the counts were triable by the same mode of trial. Consequently, the counts appear to be of the same or similar character as contemplated by La.C.Cr.P. art. 493 and were, therefore, properly charged in the same bill of information.
Further, La.C.Cr.P. art. 495.1 provides for severance of joined offenses, and states:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
A defendant has a substantial burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982); State v. Every, 96-185 (La.App. 5 Cir. 7/30/96), 678 So.2d 952, 958. Motions to sever under La. C.Cr.P. art. 495.1 are left to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984).
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980).
In the present case, defendant argues that the jury was unable to segregate the evidence of each individual charge and that the joinder of the various counts caused the jury to infer a criminal disposition. Our review of the record shows the facts of each offense were simple and uncomplicated and the evidence of each offense was presented chronologically. The applicable law was the same for each count and the jury's only task was to separate the evidence of each alleged act. This task was simplified by the State's witnesses, especially Deputy Randall, who carefully divided their testimony between the specific counts.
Additionally, videotaped recordings of the June 28, 1999, July 8, 1999, July 12, 1999 and August 6, 1999 narcotics transactions *894 were introduced into evidence and played for the jury as Deputy Randall and Deputy Blanche, respectively, testified to the corresponding offenses. Finally, given the nature of the evidence it does not appear that the jury inferred a criminal disposition or became hostile toward the defendant. Accordingly, we cannot conclude that defendant has met his heavy burden of proving that he was prejudiced by the denial of his motion to sever. Based on the foregoing, defendant's second assignment of error lacks merit.
In his third assignment of error, defendant argues that the trial court erred in imposing excessive sentences. Defendant argues the trial judge failed to consider the criteria set forth in La.C.Cr.P. art. 894.1 and provide reasons for the sentences pursuant to that article. The State responds that the record does not reveal that the trial court abused its discretion in imposing the sentences.
In the instant case, although defendant filed two separate motions to reconsider alleging both his original and enhanced sentences were excessive, we note that defendant failed to state in his motions that the trial court erred in failing to specify reasons for the sentences pursuant to La.C.Cr.P. art. 894.1. Importantly, La. C.Cr.P. art. 881.1 provides that a defendant may file a motion to reconsider sentence within thirty days of sentencing, but requires the motion, which can be made orally at the time of sentencing, or in writing, to set forth the specific grounds on which the motion is based. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, precludes a defendant from raising those grounds on appeal. State v. Mims, 619 So.2d 1059 (La.1993); State v. Decay, 01-192 (La.App. 5 Cir. 9/13/01), 798 So.2d 1057, 1075, writ denied, 01-2724 (La.8/30/02), 823 So.2d 939, reconsideration denied, 01-2724 (La.12/17/02), 833 So.2d 325. Since the sole issue raised in defendant's motions to reconsider was the excessiveness of the sentences, this Court will review for constitutional excessiveness. See, State v. Wilkinson, 00-339 (La.App. 5 Cir. 10/18/00), 772 So.2d 758, 771, writ denied, 00-3161 (La.10/12/01), 799 So.2d 494.
Both the United States and Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, 20 A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.
In reviewing a sentence for excessiveness, this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La. App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 *895 So.2d 145. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
Defendant was convicted of five counts of distribution of cocaine and sentenced to 5 concurrent thirty-year prison terms. When the offenses were committed, La. R.S. 40:967(B)(4)(b) specified the penalty for distribution of cocaine as imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence, and a possible fine of not more than fifty thousand dollars.[2]
In the instant case, although the trial court failed to provide detailed reasons for sentencing, the trial court, in imposing the thirty-year sentences, stated the following:
Not only did the jury, but I saw you selling Cocaine, all right. You did this as an enterprize [sic], it was your business. You are a Cocaine salemen [sic]. You are not fooling anybody by your statement now. This is an enterprize [sic] that you have chosen to undertke [sic]. You were caught on camera five times. That's not to say how many other times you might have done it. This is not your first offense either....
Further, defendant's prior convictions include aggravated battery, a crime of violence under La.C.Cr.P. art. 14:2(13)(e), and forgery. Additionally, at the time of trial, defendant faced two pending counts of possession of cocaine. Finally, a review of the jurisprudence reveals that courts have affirmed thirty-year sentences for distribution of cocaine convictions. See, State v. Snow, 36,826 (La.App. 2 Cir. 3/5/03), 839 So.2d 988, writ denied, 03-1188 (La.11/14/03), 858 So.2d 418 and State v. George, 34,621 (La.App. 2 Cir. 4/4/01), 785 So.2d 975. Based on the foregoing review of the nature of these crimes, defendant's criminal record including pending criminal charges, and sentences received for the same types of crime, we find that the trial court did not abuse its discretion in sentencing defendant to four concurrent thirty-year sentences.
Defendant also challenges his enhanced sentence of forty years imprisonment as excessive. As a second-felony offender, defendant was subject, under La. R.S. 15:529.1(A)(1)(a), to a minimum of fifteen years and a maximum of not more than sixty years of imprisonment. See, La. R.S. 40:967(B)(4)(b), West 1999. Here, defendant received a sentence that was two-thirds of the maximum sentence. As noted above, defendant had one previous conviction for a crime of violence and has a history of other criminal conduct. We do not find that the trial court abused its discretion in imposing an enhanced sentence of forty years of imprisonment. Based on the foregoing, we find that defendants third assignment of error lacks merit.
Lastly, in his fourth assignment of error, defendant argues that the trial court erred in denying him the benefits of probation, parole, or suspension of sentence for the entirety of his thirty-year sentences on counts one through five. Defendant argues that La. R.S 40:967 specifies that only the first two years of a defendant's sentence are to be without benefit of parole, probation, or suspension of sentence.
*896 While the State concedes that the trial court erred in imposing all of defendant's thirty-year sentences without benefits, the State also points out that, at the time of the commission of defendant's offenses, La. R.S. 40:967(B)(4)(b) provided that the first five years of the sentence were to be served without benefit of parole, probation, or suspension of sentence. In this case, imposition of the entire sentence without benefit of parole, probation, or suspension of sentences was illegal. See, State v. Morris, 01-179 (La.App. 5 Cir. 8/28/01), 798 So.2d 1004, 1011.
An illegal sentence, however, may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La.C.Cr.P. art. 882; La. R.S. 15:301.1(C). Accordingly, we amend the sentence to reflect that only the first five years of defendant's thirty-year sentences on counts two through five are to be served without benefit of parole, probation, or suspension of sentence.
Finally, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. On appeal, the State notes that defendant received an illegally lenient enhanced sentence because the trial judge did not impose the enhanced sentence without "benefit of probation or suspension of sentence" or without benefit of parole for the first five years of the sentence. La. R.S. 15:529.1(G); La. R.S. 40:967(B)(4)(b), West 1999.
When a defendant is sentenced as a multiple offender, "the penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Taylor, 99-385 (La.App. 5 Cir. 8/31/99), 743 So.2d 749, 754. We agree with the State's contention and note that, under La. R.S. 15:301.1(A), as interpreted by State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799, these restrictions are imposed by operation by law. See, State v. Segura, 02-280 (La.App. 5 Cir. 9/30/02), 829 So.2d 587, 592, writ denied, 02-2696 (La.3/28/03), 840 So.2d 569. Accordingly, no corrective action is required on appeal.
CONVICTIONS AFFIRMED; SENTENCES AMENDED AND AFFIRMED.
NOTES
[1] Deputy Randall testified at trial that "two twenties" is street slang for two $20.00 pieces of crack cocaine.
[2] "`[T]he law in effect at the time of the commission of the offense is determinative of the penalty which the accused must suffer.'" State v. Cook, 02-104 (La.App. 5 Cir. 5/29/02), 820 So.2d 1144, 1145 (quoting State v. Wright, 384 So.2d 399, 401 (La.1980)).