905 So.2d 405 (2005)
STATE of Louisiana
v.
Claude ROBINSON.
No. 04-KA-1417.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*406 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.

STATEMENT OF THE CASE
This is defendant's second appeal. In his first appeal, State v. Robinson, 03-1350 (La.App. 5 Cir. 3/30/04), 871 So.2d 575, writ denied, 04-1081 (La.11/15/04), 888 So.2d 767, this Court affirmed defendant's conviction and sentence for possession with intent to distribute cocaine and remanded the case for defendant to be advised of the two-year prescriptive period for filing an application for post-conviction relief. At the time of his first appeal, defendant had been charged as a multiple offender, but the multiple offender hearing was still pending.
In the multiple offender bill of information, the State alleged that defendant was a fourth felony offender based on a 1980 conviction for attempted aggravated rape, a 1983 conviction for several counts of theft between $100 and $500 and theft over $500, a 1990 conviction for theft between $100 and $500, and a 1998 conviction for possession of heroin. After the rendition of the appellate opinion, a multiple offender hearing was held and defendant was found to be a fourth felony offender. His original sentence was vacated and he was sentenced as a multiple offender, under LSA-R.S. 15:529.1, to life imprisonment without the benefit of parole, probation, or suspension of sentence.

*407 FACTS

The facts surrounding defendant's underlying conviction are reported in State v. Robinson, supra at 578, as follows:
On February 9, 2001, Agent Todd Vignes obtained a search warrant for 634 Second Avenue in Harvey based on information that defendant was involved in narcotics activity at that location. The warrant was executed at approximately 11:50 p.m. on the same date. Agent Vignes, along with six or seven additional narcotics officers, quietly approached the specified residence wearing either black T-shirts or blue wind breakers bearing the POLICE insignia. Once on the porch, Agent Vignes heard people inside the home talking. The voices stopped and Agent Vignes saw someone look outside through the side panel window of the door. Agent Vignes then heard someone yell inside the home and heard scurrying movement away from the door and front room. Concerned the occupants of the home knew of the police presence and the probability they would destroy the evidence or obtain a weapon, Agent Vignes authorized immediate entry into the home.
A battering ram was used on the front door to gain access. When the battering ram first hit the door, Agent Vignes announced, "police with search warrant." After approximately three hits, the police were able to enter the home which was a shotgun double. Four people were in the home including defendant who was found in the kitchen at the back of the house. As Agent Vignes approached defendant, he observed defendant reach into a Crown Royal bag, pull out a brown pill bottle, and attempt to open the pill bottle and discard its contents down the kitchen sink drain. When Agent Vignes reached defendant, defendant shoved the pill bottle into his sweat pants.
Defendant was subsequently arrested and the pill bottle was seized from his pants. The pill bottle contained five clear plastic bags each containing off-white rocks that later tested positive for cocaine. A search of the home revealed $1,300, which was found in a brown sock in the Crown Royal bag, razor blades, and plastic baggies with the corners removed. According to Agent Vignes, defendant stated that he lived at the residence alone and any drugs found belonged to him.
Defendant presented the two co-defendants, Eric Homrich and Chiro Chimento, as witnesses at trial. Both witnesses, who had already pled guilty to the drug charges related to the incident, testified the drugs and the money belonged to Homrich.

DISCUSSION
In this appeal, defendant argues that his life sentence as a fourth felony offender is excessive. He contends that the trial court should have deviated from the mandatory minimum sentence, as permitted under State v. Dorthey, 623 So.2d 1276 (La.1993). While defendant concedes that the amended version of LSA-R.S. 15:529.1, which reduced the length of incarceration for non-violent offenders, does not apply to him, he asserts that the trial court should have considered the legislative intent behind the ameliorative changes to the habitual offender statute as a basis for departing from the mandatory life sentence.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or *408 imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
A mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 342, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). In State v. Dorthey, supra at 1280-1281, the Louisiana Supreme Court specifically held that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. A court may only depart from the mandatory sentence if it finds clear and convincing evidence in the present case that would rebut the presumption of constitutionality. Id. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, supra at 676, quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in rare situations. State v. Davis, 01-123 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 132. The trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 384. A defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. State v. Johnson, supra at 676. The Louisiana Supreme Court has explained:
[t]his is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.
State v. Lindsey, supra at 343.
Shortly after defendant committed his underlying offense on February 9, 2001, the Louisiana Legislature amended LSA-R.S. 15:529.1 to provide that a life sentence is only mandated when the fourth felony and two of the prior felonies are crimes of violence, drug crimes punishable by ten years or more, or any other crime punishable by twelve years or more. 2001 La. Act. 403. The amendment was effective June 15, 2001. Defendant admits he was properly sentenced under the pre-amendment *409 version of LSA-R.S. 15:529.1 but contends the trial court should have considered the amendment when imposing sentence.
In State v. Harris, 02-873 (La.App. 5 Cir. 1/28/03), 839 So.2d 291, writ denied, 03-0846 (La.10/31/03), 857 So.2d 474, defendant was convicted of distribution of cocaine, adjudicated a third felony offender, and was sentenced to life imprisonment. On appeal, defendant argued he should have been sentenced under the amended version of LSA-R.S. 15:529.1 or, alternatively, that his life sentence was excessive because the trial judge should have considered the amendment when imposing sentence. This Court found the amended version of LSA-R.S. 15:529.1 did not apply to defendant because his underlying offense was committed prior to the amendment's effective date. This Court further determined his life sentence was not excessive despite the ameliorative changes to LSA-R.S. 15:529.1. This Court found defendant failed to carry his burden of proof so as to warrant a downward departure from the mandatory life sentence.
Also, in State v. Jerome, 03-126 (La. App. 5 Cir. 4/29/03), 845 So.2d 1194, this Court upheld defendant's mandatory life sentence as a third felony offender where his underlying conviction was for distribution of cocaine and his predicate convictions were for possession of cocaine and another violation of the Uniform Controlled Dangerous Substances Law. Defendant argued his mandatory life sentence was excessive and that the trial court should have considered the ameliorative changes to the habitual offender statute to justify a downward departure from the mandatory minimum sentence. This Court noted defendant argued his predicate offenses were non-violent but found defendant made no showing of exceptional circumstances to justify a downward departure and, thus, failed to carry his burden of proof.
In the present case, no evidence was presented at the time of sentencing regarding a downward departure from the mandatory minimum life sentence. Prior to sentencing, defendant simply asked the court for a Dorthey departure from the mandatory life sentence. Defendant noted that he had not been convicted of any violent crime since 1977. The trial judge responded:
In asking to be consider  to consider Dorothy [sic], I am not going to consider Dorothy. [sic] I have dealt with Mr. Robinson long enough to know that Dorothy [sic] is totally and completely inappropriate. I am not going toso therehe's got so many convictions, he's got so many things all the way back, he'she needs to be in jail[.]
As previously noted, a defendant's record of non-violent offenses cannot be the major reason for declaring a mandatory minimum sentence excessive. Defendant made no showing of exceptional circumstances to justify a downward departure. Therefore, we find that defendant failed to carry his burden of proving the sentence imposed was excessive. Accordingly, this assignment of error is without merit.
As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). One error was noted.
After defendant was sentenced as a multiple offender, the trial court failed to advise him of the two-year prescriptive period for filing an application for post-conviction relief, in accordance with LSA-C.Cr.P. art. 930.8. Accordingly, we remand the case and order the trial court to *410 inform defendant of the prescriptive period for filing for post-conviction relief by sending him written notice within ten days after the rendition of this opinion and to file written proof in the record that defendant received said notice. State v. Cordero, 99-44 (La.App. 5 Cir. 6/1/99), 738 So.2d 84, 93, writs denied, 99-1877 and 99-1878 (La.11/24/99), 750 So.2d 981.

DECREE
For the reasons set forth above, we affirm defendant's multiple offender sentence. We remand the case and order the trial court to inform defendant of the two-year prescriptive period by sending him written notice within ten days after the rendition of this opinion and to file written proof in the record that defendant received said notice.
AFFIRMED; REMANDED WITH INSTRUCTIONS.